IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA

CHARLES WHITNEY,                :
                                :
        Plaintiff               :
                                :
    v.                          :    CIVIL NO. 3:CV-11-2022
                                :
DORINA VARNER, ET AL.,          :    (Judge Conaboy)
                                :
        Defendants              :

_____

# MEMORANDUM
## Background

Charles Whitney (Plaintiff), an inmate presently confined at the Benner State Correctional Institution, Bellefonte, Pennsylvania (SCI-Benner), initiated this pro se civil rights action pursuant to 42 U.S.C. § 1983. The Complaint sets forth allegations pertaining to Plaintiff's prior confinement at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Smithfield).

By Memorandum and Order dated August 24, 2012, Defendants' motion to dismiss was partially granted. See Doc. 33. Specifically dismissal was granted in favor of Defendants with respect to: (1) any claims for monetary damages brought against a Defendant in his or her respective official capacities; (2) all allegations solely based upon any Defendant's supervisory capacity; (3) any attempt by Plaintiff to establish liability against any Defendant based upon their handling of his administrative grievances, complaints, or

1

appeals; (4) all allegations of conspiracy; (5) any claim relating to the placement of Plaintiff in administrative custody; (6) claims relating to the issuance of misconduct charges as well as any due process claims against Hearing Examiner Mitchell or any Defendant who ruled on Whitney's ensuing administrative appeals. Entry of dismissal was granted in favor of Defendants Dorina Varner; C. Kephart; S. Dell; Dell; Safko; and Hiquet.

As a result of that decision, the Remaining Defendants are: Mary Ann Lockett and Captain Leggett of the Fayette State Correctional Institution, LaBelle, Pennsylvania (SCI-Fayette)[1]; as well as the following SCI-Smithfield officials: Superintendent Jon Fisher; Deputy Superintendent R.S. Hannah; Superintendent's Assistant Lisa Hollibaugh; Major Robinson; Captains Myers, Wright, Dill, and Harris; Hearing Examiner Charles Mitchell; Sergeant Britton; J. Whitesel; M. Biser; Lieutenants B. M. Booker and J. Rivello; Gerholt; Powell; Boyd; C. Mengol; Unit Manager McCauley; Correctional Officers S. Shoe; McVey; J. Householder; and Ersek III.[2] See Doc. 1, pp. 2-3.

Plaintiff's surviving allegations contend that: (1) he was the target of retaliatory mistreatment by prison officials over his initiation of administrative grievances and (2) was subjected to

---

1. Plaintiff was transferred from SCI-Fayette to SCI-Smithfield after completing a Special Management Unit (SMU) program.

2. Remaining Defendants assert that they have been unable to identify any correctional official by the name of S. Shoe. Moreover, John Doe Defendants listed in the Complaint have never been identified.

2

unconstitutional conditions of confinement while housed in the SCI-Smithfield Restricted Housing Unit (RHU).

Remaining Defendants timely filed an answer to Whitney's surviving allegations. See Doc. 55. By Order dated December 17, 2013, Plaintiff's motion requesting leave to file a supplemental complaint for the purpose of adding additional defendants and setting forth new claims of retaliation and excessive force was denied. See Doc. 89. Whitney's motion seeking leave to file an amended complaint (Doc. 133) was denied on June 29, 2015. In addition, this Court entered multiple orders regarding discovery related disputes which arose between the parties.

Presently pending is the Remaining Defendants' motion seeking entry of summary judgment. See Doc. 115. The opposed motion is ripe for consideration.

## Discussion

**Standard of Review**

Summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the

3

non-moving party.  Id. at 248.  The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party.  Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts.  Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint.  See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial."  Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted).  Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

4

**Administrative Exhaustion**

Remaining Defendants' initial argument for summary judgment asserts that Plaintiff's conditions of confinement claims regrading: (1) inadequate clothing; (2) denial of heat during winter; (3) denial of exercise; (4) inadequate emergency treatment; (5) being required to wear wet clothing; (6) denial of water and a working toilet for two days; (7) exposure to second hand smoke; (8) exposure to chemical agents; (9) having to live with mentally ill inmates; (10) witnessing prisoner suicide; and (11) sleeping on the floor, cannot be entertained because Whitney failed to exhaust his administrative remedies with respect to said allegations. See Doc. 116, p. 18. They indicate that Whitney exhausted his other conditions of confinement claims.[3]

Plaintiff generally counters that his Eighth Amendment claims were exhausted as he filed more than forty (40) grievances regarding the conditions of his confinement. See Doc. 136, p. 34.

Section 1997e(a) of Title 42 U.S.C. provides:

> No action shall be brought with respect to
> prison conditions under Section 1979 of
> the Revised Statutes of the United States
> (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail,
> prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

---

3. Remaining Defendants also admit that Plaintiff exhausted a claim regarding inadequate lighting in his SCI-Fayette cell. However, while Plaintiff indicates that he was subjected to retaliation for filing grievances against SCI-Fayette officials, his Complaint does not raise a claim about the SCI-Fayette lighting. Moreover, any such claim would only be properly raised in the United States District Court for the Western District of Pennsylvania which is where SCI-Fayette is located.

5

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

The Pennsylvania Department of Corrections ("DOC") has established a Consolidated Inmate Grievance Review System which has been periodically amended. Section V of DC-ADM 804 (effective

6

December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." See Doc. 29, p. 8. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

The Third Circuit Court of Appeals has recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable. Spruill, 372 F.3d at 234. The Court of Appeals explained that an unexplained failure to identify a responsible prison official in a grievance

constitutes a procedural default of the claim. It also noted that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance. However, in Jones, 549 U.S. at 219, the United States Supreme Court established that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances."

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement." Id. at 230. It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest." Id. Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations. Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement." Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75. The Third Circuit Court of Appeals reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for

8

excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See, Jones, 549 U.S. at 216; see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it. In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

Whitney states that he was transferred to SCI-Smithfield "from SCI Fayette as an SMU graduate" on November 16, 2010 with the belief that he was to be housed in general population. Doc. 1, p. 3, ¶ 1. However, upon his arrival, correctional officials decided that Whitney should be initially placed in the prison's RHU on administrative custody status.

While housed in the RHU, Plaintiff contends that he was: sprayed with a chemical agent; forced to live with mentally ill prisoners; required to sleep on the floor; subjected to excessive urine testing and cell searches, exposed to second hand smoke; had to witness prisoner suicide; forced to wear wet clothing; and was denied potable drinking water, food, cleaning materials, adequate

9

clothing, showering, rehabilitative programming, heating during the winter, legal research, exercise, emergency medical treatment, lighting, hygiene products, reading materials, the ability to practice his religious beliefs, as well as visitation privileges.

In support of their non-exhaustion argument, Remaining Defendants have submitted a declaration pursuant to 28 U.S.C. § 1746 by SCI-Smithfield Superintendent's Assistant Lisa Hollibaugh. See Doc. 122, Exhibit 3. Defendant Hollibaugh states that the prison's inmate grievance records "show that Plaintiff did **not** file grievances concerning inadequate clothing, denial of heat during winter, denial of exercise or yard, inadequate emergency treatment, wearing wet clothing, denial of water for two days when the tier was flooded by other inmates and a resultant inability to flush toilets, exposure to second hand smoke, exposure to chemical agents, witnessing suicide, living with mentally ill inmates, and sleeping on the floor at SCI-Smithfield." Id. at ¶ 3 (emphasis in original).

Also submitted are copies of multiple grievances filed by Plaintiff regarding his SCI-Smithfield confinement and the related administrative responses. A review of those submissions shows only that Plaintiff filed a grievance alleging that the drinking water in his cell was tainted. See Doc. 121, p. 23.

It is undisputed that Plaintiff was aware and oftern employed the DOC's administrative grievance system. Remaining Defendants have adequately satisfied their burden of demonstrating that Plaintiff failed to exhaust his available administrative

10

remedies with respect to the following conditions of confinement claims: inadequate clothing, denial of heat during winter, denial of exercise or yard, inadequate emergency medical treatment, wearing wet clothing, denial of water for two days when the tier was flooded by other inmates and a resultant inability to flush toilets, exposure to second hand smoke, exposure to chemical agents, witnessing suicide, living with mentally ill inmates, and sleeping on the floor.

Plaintiff's bald assertion that he filed multiple grievances regarding the conditions of his confinement at SCI-Smithfield does not support a determination that the above listed claims were exhausted. Whitney has also does not provided any basis for a determination that the exhaustion requirement should be excused. Accordingly the request for entry of summary on the basis of non-exhaustion will be granted with regards to the above listed claims.

However, the additional multiple conditions of confinement claims pertaining to the SCI-Smithfield RHU which are listed in the Complaint but not addressed by Hollibaugh's declaration: denial of food; inadequate lighting placement on food loaf; lack of potable drinking water; inability to exercise his religious beliefs; excessive urine testing and cell searches; denial of cleaning materials, showering, visitation privileges, rehabilitative programming, legal research, reading materials, and hygiene products will proceed.

**Conditions of Confinement**

Remaining Defendants' second argument maintains that the

Plaintiff's conditions of confinement claims "cannot constitute cruel and unusual punishment "as a matter of law." Doc. 116, p. 19. They elaborate that Whitney's allegations of denial of potable water and denial of food for three days at SCI-Smithfield and his assertion inadequate lighting at SCI-Fayette do not assert viable Eighth Amendment violations. They generally add that Whitney's remaining claims did not result in the denial of the minimal civilized measure of life's necessities or implicate the wanton infliction of pain and as such are insufficient. See Doc. 116, p. 19.

The Eighth Amendment's prohibition of cruel and unusual punishment imposes duties on prison officials to provide prisoners with the basic necessities of life, such as food, clothing, shelter, sanitation, medical care and personal safety. See Farmer v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Under Farmer, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel

12

and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition, the inmate must show that the prison official responsible for the conditions of confinement acted with "a sufficiently culpable state of mind." Id. at 298. A prison official violates the Eighth Amendment when he acts with deliberate indifference to a known objectively serious risk to a prisoner's health or safety. See Farmer, 511 U.S. at 837. Critical factors which must be considered are the duration of the complainant's exposure to the alleged unconstitutional conditions and the totality of the circumstances.

The following claims pertaining to Whitney's SCI-Smithfield RHU confinement remain pending before this Court: denial of food; inadequate lighting, placement on food loaf; lack of potable drinking water; inability to exercise his religious beliefs; excessive urine testing and cell searches; denial of cleaning

13

materials, showering, visitation privileges, rehabilitative programming, legal research, reading materials, and hygiene products will proceed.

The pending summary judgment motion only addresses the issues of potable drinking water, food loaf, visitation and exercise yard privileges. With respect to the Plaintiff's claim that he was placed on food loaf, this Court agrees that only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim. Warren v. Irvin, 985 F. Supp. 350 (W.D. N.Y. 1997); Williams v. Berge, 2002 WL 32350026 *2 (W.D. Wis. 2002); Moss v. Ward, 450 F. Supp. 591, 596 (W.D. N.Y. 1978)(deprivation of one meal may not be cruel and unusual punishment). Accordingly, the placement of Whitney on a food loaf diet for a limited three (3) day period of time does not by itself rise to the level of an Eighth Amendment violation. Lane v. Culp, 2007 WL 954101 *4 (W.D. Pa. March 28, 2007). However, Plaintiff's claims that he was intentionally denied meals has not been addressed. Remaining Defendants have also submitted competent evidence (Doc. 128, Exhibit 7) showing that the prison's water supply was annually tested with favorable results and that Whitney's institutional medical records do not indicate that he was ever diagnosed or treated for any problem relating to ingestion of impure water. The above information, although relevant, does not sufficiently establish that the drinking water inside of the Plaintiff's RHU cell was potable. Moreover, the alleged lack of drinking water as well as the food loaf claim must arguably be

14

considered when considering the totality of the circumstances of Whitney's RHU confinement claim with respect to the issue of denial of food and water.

Remaining Defendants' failure to address many of Plaintiff's other specific conditions of confinement allegations (denial of showering, cleaning and hygiene products) is also problematic since the totality of those alleged deprivations could conceivably set forth a viable claim of unsanitary living conditions in violation of the Eighth Amendment. Furthermore, the unaddressed allegation that Whitney was denied the ability to exercise his religions beliefs could stand by itself as a constitutional violation.[4]

Based upon the above concerns, this Court is unable to make a determination as to whether the totality of the conditions of Plaintiff's RHU stay with respect to the administratively exhausted allegations listed in the Complaint were within acceptable constitutional parameters. Accordingly, since there are clearly issues of material fact in dispute, this request for summary judgment will be denied.

**Retaliation**

Whitney claims that after he filed a loss of property based grievance with Defendant Lockett of SCI-Fayette, Lockett and Captain Leggett of SCI-Fayette initiated a scheme to subject him retaliation. Id. at p. 5, ¶ 15. It is asserted that Leggett

---

4. Prisoners, as is well recognized, must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).

15

enlisted the assistance of officials at SCI-Smithfield including Defendants Myers, Wright, Harris, Booker, and Dill. As a result, Whitney was threatened with harm, had his institutional records falsified to reflect that he was a gang member and had a drug history which resulted in the prisoner being subjected to multiple drug testing.

Plaintiff was also purportedly issued three (3) separate retaliatory misconduct charges including an initial charge by SCI-Smithfield CO Householder for refusing to give back a drinking cup. Those charges were initiated, witnessed and approved by a variety of correctional officials.[5] Plaintiff adds that he was denied due process during the ensuing disciplinary proceedings as a further retaliatory measure.

In addition to the purportedly baseless disciplinary charges, Counselor Kephart retaliated against Plaintiff by preparing a report which falsely classified the inmate as being a threat to himself and others. As a result of that classification, Whitney was placed on administrative custody status and prevented from being released into general population. Furthermore, Defendants Kephart, McCavley, Shoe, Hannah, Whitesel and Biser allegedly falsified a transfer petition for the purpose of arranging a retaliatory transfer of the Plaintiff back to SCI-Fayette.

---

5. On March 3, 2011, CO McVey issued Plaintiff a second falsified retaliatory misconduct. Captain Harris allegedly approved this charge without initiating any type of investigation Plaintiff claims that he was issued a third baseless misconduct charge by CO Boyd which was approved by Captain Dill

16

To establish a Section 1983 retaliation claim, a plaintiff bears the burden of satisfying three (3) elements. First, a plaintiff must prove that he was engaged in a constitutionally protected activity. Rauser v. Horn, 241 F.3d 330, 333 (3d Cir. 2001). Second, a prisoner must demonstrate that he "suffered some 'adverse action' at the hands of prison officials." (Id.)(quoting Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000)). This requirement is satisfied by showing adverse action "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." (Id.)(quoting Suppon v. Dadonna, 203 F.3d 228, 235 (3d Cir. 2000)). Third, a prisoner must prove that "his constitutionally protected conduct was 'a substantial or motivating factor' in the decision to discipline him." Rauser, 241 F.3d at 333-34(quoting Mount Health Bd. of Educ. v. Doyle, 429 U.S. 274, 287 (1977)).

This Court's August 24, 2012 Memorandum and Order in addressing the Plaintiff's allegations of retaliation, concluded that it was apparent that there were a number of confrontations between Whitney and the RHU staff which were troubling and sufficient to withstand scrutiny under Federal Rule of Civil Procedure 12(b)96). See Doc. 33, pp. 16-17. Remaining Defendants' pending motion contends that although the Complaint satisfies the first two prongs of Rauser, Plaintiff's "fanciful theory" does not satisfy the third causation prong of Rauser. Doc. 116, p. 23. In support of their argument, they have submitted declarations from various correctional officials including Deputy Superintendent Jay

17

Whitesel, Major Daniel Myers, and Security Lieutenant Bradley Booher. See Doc. 128, Exhibits 10-12. As previously noted, Remaining Defendants have also supplied copies of Plaintiff's grievances and the responses thereto pertaining to his SCI-Smithfield confinement.

The mere fact that an adverse action occurs after either a complaint or grievance is filed is relevant, but not dispositive, for the purpose of establishing a causal link between the two events. See Lape v. Pennsylvania, 157 Fed. App'x. 491, 498 (3d Cir. 2005). Only where the facts of a particular case are "unusually suggestive" of a retaliatory motive will temporal proximity, standing alone, support an inference of causation. Krouse v. American Sterlizer Co., 126 F.3d 494, 503 (3d Cir. 1997).

Once Plaintiff has made a prima facie case, the burden shifts to Defendants to prove by a preponderance of the evidence that they "would have made the same decision absent the protected conduct for reasons reasonably related to penological interest." Carter v. McGrady, 292 F.3d 152, 158 (3d. Cir. 2002)(internal quotation and citation omitted). When analyzing a retaliation claim, it must be recognized that the task of prison administrators and staff is difficult, and the decisions of prison officials require deference, particularly where prison security is concerned. Rauser, 241 F.3d at 334.

With respect to Plaintiff's claim of being issued a retaliatory misconduct charge, the filing of a false disciplinary charge is not a constitutional violation unless the charge was

18

filed in retaliation for the exercise of a constitutional right. See Flanagan v. Shively, 783 F.Supp. 922, 931 (M.D. Pa.1992), aff'd., 980 F.2d 722 (3d Cir.1992). For example, the Third Circuit Court of Appeals has ruled that an allegation of falsifying misconduct reports in retaliation for an inmate's "resort to legal process" is a violation of the First Amendment guarantee of access to the courts. Smith, 293 F.3d 653 (citation omitted).

As noted in Allah, a prisoner litigating a retaliation claim need not prove that he had an independent liberty interest in the privileges that he was denied. Thus, the relevant inquiry is not whether the alleged retaliatory conduct was unconstitutional. On the contrary, Plaintiff only needs to establish that he was subjected to adverse action in retaliation for his engagement in constitutionally protected conduct.

In light of the undisputed record, it is apparent to this Court that Plaintiff has raised wholly speculative, far fetched assertions that he was retaliated against for filing a loss of property based grievance at another correctional facility (a grievance which Plaintiff admittedly withdrew upon discovering that the property at issue was properly forwarded to his new prison).

Based upon the parties' respective evidentiary submissions, it is clear that Whitney's contentions of retaliation are entirely speculative. The declarations and documentary evidence provided by the Remaining Defendants show that the actions taken by SCI-Smithfield staff were in accordance with prison policy or in furtherance of legitimate penological objectives and in many cases

19

were simply responses to Whitney's failure to comply with the directives of prison staff.

Simply put, given the undisputed facts Whitney's allegations do not support a claim that the disciplinary charges, evaluations, classifications, and other measures taken against him were retaliatory. Rather, the challenged conduct by the Remaining Defendants was the result of Plaintiff's conduct notably his repeated failures to abide by institutional rules and not an effort to retaliate against the prisoner for exercising his right of access to the courts. It is apparent from a review of the parties' filings that Whitney was often at odds with prison officials. However, there are no facts to support a claim that all of the actions taken against Whitney at SCI-Smithfield were connected or part of a conspiracy by multiple officials at two state correctional facilities to retaliate against the Plaintiff for filing institutional grievances.

In conclusion, Plaintiff has failed to satisfy the third <u>Rauser</u> prong that a prisoner must prove that his constitutionally protected conduct was a substantial or motivating factor in the actions taken against him while confined at SCI-Smithfield, entry of summary judgment is appropriate with respect to the wholly speculative contentions of retaliation. An appropriate Order will enter.

        S/Richard P. Conaboy_____
        RICHARD P. CONABOY
        United States District Judge

DATED: SEPTEMBER 22, 2015