IN THE UNITED STATES DISTRICT COURT
FOR THE
MIDDLE DISTRICT OF PENNSYLVANIA


| | | |
|---|---|---|
| CHARLES WHITNEY, | : | |
| | : | |
| Plaintiff | : | |
| | : | |
| v. | : | CIVIL NO. 3:CV-11-2022 |
| | : | |
| DORINA VARNER, ET AL., | : | (Judge Conaboy) |
| | : | |
| Defendants | : | |

_____

**MEMORANDUM**
**Background**

This <u>pro se</u> civil rights action pursuant to 42 U.S.C. § 1983 was initiated by Charles Whitney (Plaintiff), an inmate presently confined at the Benner State Correctional Institution, Bellefonte, Pennsylvania (SCI-Benner).  Plaintiff raises claims pertaining to his prior confinement at the Smithfield State Correctional Institution, Huntingdon, Pennsylvania (SCI-Smithfield).

Defendants' motion to dismiss was partially granted by Memorandum and Order dated August 24, 2012.  <u>See</u> Doc. 33. Specifically, dismissal was granted in favor of Defendants with respect to: (1) any claims for monetary damages brought against a Defendant in his or her respective official capacities; (2) all allegations solely based upon any Defendant's supervisory capacity; (3) any attempt by Plaintiff to establish liability against any Defendant based upon their handling of his administrative grievances, complaints, or appeals; (4) all allegations of

1

conspiracy; (5) any claim relating to the placement of Plaintiff in administrative custody; (6) claims relating to the issuance of misconduct charges as well as any due process claims against Hearing Examiner Mitchell or any Defendant who ruled on Whitney's ensuing administrative appeals.  Entry of dismissal was granted in favor of Defendants Dorina Varner; C. Kephart; S. Dell; Dell; Safko; and Hiquet.

By Memorandum and Order dated September 22, 2015, Remaining Defendants' motion for summary judgment was partially granted.  See Doc. 153.  Plaintiff's following conditions of confinement claims: inadequate clothing, denial of heat during winter, denial of exercise or yard, inadequate emergency medical treatment, wearing wet clothing, denial of water for two days when the tier was flooded by other inmates and a resultant inability to flush toilets, exposure to second hand smoke, exposure to chemical agents, witnessing suicide, living with mentally ill inmates, and sleeping on the floor were dismissed for failure to exhaust administrative remedies.  In addition, summary judgment was granted in favor of the Remaining Defendants with respect to the allegations of retaliation.

However, summary judgment motion was denied with respect to the following claims:  denial of food; inadequate lighting, placement on food loaf; lack of potable drinking water; inability to exercise his religious beliefs; excessive urine testing and cell searches; denial of cleaning materials, showering, visitation

2

privileges, rehabilitative programming, legal research, reading materials, and hygiene products.

As a result of those decisions, Remaining Defendants are the following SCI-Smithfield officials: Superintendent Jon Fisher; Deputy Superintendent R.S. Hannah; Superintendent's Assistant Lisa Hollibaugh; Major Robinson; Captains Myers, Wright, Dill, and Harris; Hearing Examiner Charles Mitchell; Sergeant Britton; J. Whitesel; M. Biser;  Lieutenants B. M. Booker and J. Rivello; Gerholt; Powell; Boyd; C. Mengol; Unit Manager McCauley; Correctional Officers S. Shoe; McVey; J. Householder; and Ersek III.  See Doc. 1, pp. 2-3.

Presently pending is the Remaining Defendants' second motion seeking entry of summary judgment.  See Doc. 160.  The opposed motion is ripe for consideration.

## Discussion

Remaining Defendants contend that entry of summary judgment is appropriate because: (1) Plaintiff's surviving claims are largely beyond the statute of limitations; (2) Whitney failed to exhaust his administrative remedies with respect to some claims; and (3) the allegations pertaining to the alleged conditions of his confinement do not establish an Eighth Amendment violation.  See Doc. 162, p. 2.

## Standard of Review

As previously discussed by this Court's September 22, 2015 Memorandum and Order, summary judgment is proper if "the pleadings, the discovery and disclosure materials on file, and any affidavits

3

show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); See also Saldana v. Kmart Corp., 260 F.3d 228, 231-32 (3d Cir. 2001). A factual dispute is "material" if it might affect the outcome of the suit under the applicable law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A factual dispute is "genuine" only if there is a sufficient evidentiary basis that would allow a reasonable fact-finder to return a verdict for the non-moving party. Id. at 248. The court must resolve all doubts as to the existence of a genuine issue of material fact in favor of the non-moving party. Saldana, 260 F.3d at 232; see also Reeder v. Sybron Transition Corp., 142 F.R.D. 607, 609 (M.D. Pa. 1992). Unsubstantiated arguments made in briefs are not considered evidence of asserted facts. Versarge v. Township of Clinton, 984 F.2d 1359, 1370 (3d Cir. 1993).

Once the moving party has shown that there is an absence of evidence to support the claims of the non-moving party, the non-moving party may not simply sit back and rest on the allegations in its complaint. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). Instead, it must "go beyond the pleadings and by [its] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." Id. (internal quotations omitted); see also Saldana, 260 F.3d at 232 (citations omitted). Summary judgment should be granted where a party "fails to make a showing sufficient to establish the existence of an element essential to

4

that party's case, and on which that party will bear the burden at trial."  Celotex, 477 U.S. at 322-23.  "'Such affirmative evidence – regardless of whether it is direct or circumstantial – must amount to more than a scintilla, but may amount to less (in the evaluation of the court) than a preponderance.'"  Saldana, 260 F.3d at 232 (quoting Williams v. Borough of West Chester, 891 F.2d 458, 460-61 (3d Cir. 1989)).

**Food Loaf**

The Order accompanying this Court's September 22, 2014 Memorandum erroneously indicated that Plaintiff's claim pertaining to placement on food loaf should proceed.  However, this Court's Memorandum of that date correctly noted that it is well settled that only a substantial deprivation of food to a prisoner sets forth a viable Eighth Amendment claim.  Warren v. Irvin, 985 F. Supp. 350 (W.D. N.Y. 1997); Williams v. Berge, 2002 WL 32350026 *2 (W.D. Wis. 2002); Moss v. Ward, 450 F. Supp. 591, 596 (W.D. N.Y. 1978)(deprivation of one meal may not be cruel and unusual punishment).

The September 22, 2015 Memorandum concluded that the placement of Whitney on a food loaf diet for a limited three (3) day period of time did not by itself rise to the level of an Eighth Amendment violation.  Lane v. Culp, 2007 WL 954101 *4 (W.D. Pa. March 28, 2007).  Accordingly, since the merits of the food loaf claim have already been addressed and found to be meritless, the request for entry of summary judgment with respect to the food loaf claim will be granted.

5

**Statute of Limitations**

Remaining Defendants vaguely assert that Plaintiff's surviving claims are "largely beyond" the statute of limitations which preclude any claims prior to October 28, 2009.  Doc. 162, p. 2.  They indicate that the following allegations are time barred: (1) any claim regarding the lighting at SCI-Fayette;[1] (2) assertions of denial of food with exception of his placement on food loaf for three days; (3) the alleged deprivation of Plaintiff's right to exercise his religious beliefs

In reviewing the applicability of the statute of limitations to an action filed pursuant to § 1983, a federal court must apply the appropriate state statute of limitations which governs personal injury actions.  Wilson v. Garcia, 471 U.S. 261, 276 (1985); Urrutia v. Harrisburg County Police Dept., 91 F.3d 451, 457 n. 9 (3d Cir. 1996); Cito v. Bridgewater Twp. Police Dep't, 892 F.2d 23, 25 (3d Cir. 1989).

The United States Supreme Court clarified its decision in Wilson when it held that "courts considering § 1983 claims should borrow the general or residual [state] statute for personal injury actions." Owens v. Okure, 488 U.S. 235, 250 (1989); Little v. Lycoming County, 912 F. Supp. 809, 814 (M.D. Pa.), aff'd 101 F.3d 691 (3d Cir. 1996)(Table).  Pennsylvania's applicable personal injury statute of limitations is two years.  See 42 Pa. Cons. Stat.

---

1.  This Court previously concluded that any claims regarding Plaintiff's SCI-Fayette confinement are not properly asserted before this Court.

Ann. § 5524(7) (Purdon Supp. 1996); Kost v. Kozakiewicz, 1 F.3d 176, 190 (3d Cir. 1993); Smith v. City of Pittsburgh, 764 F.2d 188, 194 (3d Cir.), cert. denied, 474 U.S. 950 (1985). Finally, the statute of limitations "begins to run from the time when the plaintiff knows or has reason to know of the injury which is the basis of the Section 1983 action." Gentry v. Resolution Trust Corp., 937 F.2d 899, 919 (3d Cir. 1991) (citations omitted).

A review of the docket shows that Plaintiff's Complaint is dated October 27, 2011[2] and will be deemed filed as of that date. See Houston v Lack, 487 U.S. 266, 271 (1988)(a prisoner's complaint is deemed filed at the time it was given to prison officials for mailing to the Court).

It is apparent that Plaintiff obtained knowledge of the purported violations of his constitutional rights at the time they occurred. Accordingly, this Court agrees that any claims premised upon actions which transpired prior to October 27, 2009 are time barred.

**Administrative Exhaustion**

It is next asserted that Whitney did not file and exhaust any grievances regarding his pending claims of inadequate showering; denial of cell cleaning materials; denial of food; denial of visitation; denial of rehabilitative programming; denial of legal research; and denial of hygiene products.

Section 1997e(a) of Title 42 U.S.C. provides:

---

2.  See Doc. 1, p. 23.

> No action shall be brought with respect to
> prison conditions under Section 1979 of
> the Revised Statutes of the United States
> (42 U.S.C. 1983), or any other federal
> law, by a prisoner confined in any jail,
> prison, or other correctional facility
> until such administrative remedies as are
> available are exhausted.

Section 1997e(a) requires administrative exhaustion "irrespective of the forms of relief sought and offered through administrative avenues." Porter v. Nussle, 122 S.Ct. 983, 992 (2002); Booth v. Churner, 532 U.S. 731, 741 n. 6 (2001). Claims for monetary relief are not excused from the exhaustion requirement. Nyhuis v. Reno, 204 F.3d 65, 74 (3d Cir. 2000). Dismissal of an inmate's claim is appropriate when a prisoner has failed to exhaust his available administrative remedies before bringing a civil rights action. Ahmed v. Sromovski, 103 F. Supp. 2d 838, 843 (E.D. Pa. 2000). "[E]xhaustion must occur prior to filing suit, not while the suit is pending." Tribe v. Harvey, 248 F.3d 1152, 2000 WL 167468, *2 (6th Cir. 2000)(citing Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999)); Oriakhi v. United States, 165 Fed. Appx. 991, 993 (3d Cir. 2006).

The United States Supreme Court in Jones v. Bock, 549 U.S. 199, 219 (2007), stated that the primary purpose of the exhaustion requirement is to allow "a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." Id. The administrative

exhaustion mandate also implies a procedural default component. Spruill v. Gillis 372 F.3d 218, 222 (3d Cir. 2004).

The Pennsylvania Department of Corrections ("DOC") has established a Consolidated Inmate Grievance Review System which has been periodically amended. Section V of DC-ADM 804 (effective December 8, 2010) states that "every individual committed to its custody shall have access to a formal procedure through which to seek the resolution of problems or other issues of concern arising during the course of confinement." See Doc. 29, p. 8. It adds that the formal procedure shall be known as the Inmate Grievance System and provides a forum of review and two (2) avenues of appeal. Section VI ("Procedures") of DC-ADM 804 provides that, after attempted informal resolution of the problem, a written grievance may be submitted to the Facility Grievance Coordinator within fifteen (15) working days after the events upon which the claims are based, but allowances of extensions of time will be granted under certain circumstances.

An appeal from the Grievance Coordinator's Initial Review decision may be made in writing within ten (10) working days to the Facility Manager or Superintendent. A final written appeal may be presented within fifteen (15) working days to the Secretary's Office of Inmate Grievances and Appeals (SOIGA). A prisoner, in seeking review through the DOC grievance system, may include reasonable requests for compensation or other legal relief normally available from a court. However, an improperly submitted grievance will not be reviewed.

The Third Circuit Court of Appeals has recognized that under the DOC's administrative review system a prisoner's grievance should identify specific persons, if practicable.  Spruill, 372 F.3d at 234.  The Court of Appeals explained that an unexplained failure to identify a responsible prison official in a grievance constitutes a procedural default of the claim.  It also noted that the prison's grievance process could excuse such a procedural default by identifying the unidentified person and acknowledging that they were fairly within the compass of the prisoner's grievance.  However, in Jones, 549 U.S. at 219, the United States Supreme Court established that "exhaustion is not per se inadequate simply because an individual later sued was not named in the grievances."

As explained by the Third Circuit Court of Appeals, a procedural default rule "prevents an end-run around the exhaustion requirement."  Id. at 230.  It also ensures "prisoner compliance with the specific requirements of the grievance system" and encourages inmates to pursue their administrative grievances "to the fullest."  Id.  Similarly, the Supreme Court has observed that proper exhaustion of available administrative remedies is mandatory, meaning that prisoners must comply with the grievance system's procedural rules, including time limitations.  Woodford v. Ngo, 548 U.S. 81 (2006).

"There is no futility exception" to the exhaustion requirement."  Brown v. Croak, 312 F.3d 109, 112 (3d Cir. 2002) (citing Nyhuis, 204 F.3d at 75.  The Third Circuit Court of Appeals

10

reiterated its no futility exception by rejecting an inmate's argument that exhaustion should be excused because prisoner grievances were regularly rejected. Hill v. Smith, 186 Fed. Appx. 271, 274 (3d Cir. 2006). The Court of Appeals has also rejected "sensitive' subject matter or 'fear of retaliation' as a basis for excusing a prisoner's failure to exhaust." Pena-Ruiz v. Solorzano, 281 Fed. Appx. 110, 113 (3d Cir. 2008).

An inmate is not required to specifically plead or demonstrate exhaustion in his or her complaint. See, Jones, 549 U.S. at 216; see also Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002)(a prisoner does not have to allege in his complaint that he has exhausted administrative remedies). Rather, pursuant to the standards announced in Williams v. Runyon, 130 F.3d 568, 573 (3d Cir. 1997), it is the burden of a defendant asserting the defense of non-exhaustion to plead and prove it. In Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003), the United States Court of Appeals for the Third Circuit similarly stated that "[f]ailure to exhaust administrative remedies is an affirmative defense for the defendant to plead."

It is noted that this Court previously concluded that Plaintiff filed a grievance alleging that the drinking water in his cell was tainted. See Doc. 121, p. 23. I n support of their latest non-exhaustion argument, Remaining Defendants have submitted a declaration pursuant to 28 U.S.C. § 1746 by SCI-Benner Superintendent's Assistant Holly A. Becker-Vachik. See Doc. 164. Becker-Vachik states that she reviewed the prison's inmate

grievance records with respect to Plaintiff's claims of: inadequate showering; denial of cell cleaning materials; denial of food; denial of visitation; denial of rehabilitative programming; denial of legal research; and denial of hygiene products.  The declaration adds that Becker-Vachik's review revealed that during the relevant time period Plaintiff did not pursue administrative relief regarding claims but he did file and exhaust grievances regarding religious interference and denial of reading materials.  See id. at ¶ 4.  Also submitted are copies of multiple grievances filed by Plaintiff regarding his SCI-Smithfield confinement and the related administrative responses.  Plaintiff vaguely counters that he filed other grievances and appeals which were stolen.

    As previously discussed by this Court's September 22, 2015 Memorandum and Order, it is undisputed that Plaintiff was aware and often employed the DOC's administrative grievance system.  As such, his unsupported claim that some of his grievances were stolen is not compelling.  Remaining Defendants have adequately satisfied their burden of demonstrating that Plaintiff failed to exhaust his available administrative remedies with respect to the following conditions of confinement claims: inadequate showering;[3] denial of

_____

3.  The Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers.  See Veteto v. Miller, 829 F. Supp. 1486, 1496 (M.D. Pa. 1992)(deprivation of showers during period of placement in administrative detention found not to be Eighth Amendment violation); Briggs v. Heidlebaugh, 1997 WL 318081 *3 (E.D. Pa. 1997)(denial of showers for two weeks is not a constitutional violation;  DiFilippo v. Vaughn, 1996 WL 355336 at *5 (E.D. Pa. 1996)(Eighth Amendment does not require that prisoners be afforded frequent or comfortable showers).  Accordingly, Plaintiff's claims regarding the time length of RHU showering
                                                        (continued...)

cell cleaning materials; denial of food; denial of visitation;[4]
denial of rehabilitative programming; denial of legal research; and
denial of hygiene products.  Accordingly, entry of summary judgment
with respect to those claims is appropriate.

Plaintiff assertions pertaining to lack of potable water;
religious interference; inadequate lighting, urine testing, cell
searches; and denial of reading materials which transpired after
October 27, 2009 are not subject to dismissal on the basis of non-
exhaustion.

**Conditions of Confinement**

The Eighth Amendment's prohibition of cruel and unusual
punishment imposes duties on prison officials to provide prisoners
with the basic necessities of life, such as food, clothing,
shelter, sanitation, medical care and personal safety.  See Farmer

---

3.  (...continued)
privileges does not rise to the level of a constitutional
violation.

4.  It is additionally noted that neither prisoners nor their
family members have an inherent constitutional right to visits.
See Doe v. Sparks, 733 F. Supp. 227, 230 & n.3 (W.D. Pa. 1990);
Buehl v. Lehman, 802 F. Supp. 1266, 1270 (E.D. Pa. 1992)(visitation
is a privilege subject to the discretion of prison authorities).
Removal from society is a fundamental incident of
imprisonment and where visitation is permitted, it is often
narrowly circumscribed.  See Kentucky Dep't of Corrections v.
Thompson, 490 U.S. 454, 461 (1989) (denying prison visitation with
mother characterized as well within ordinarily contemplated terms
of imprisonment). The Court of Appeals for the Third Circuit has
similarly concluded that a legitimate prohibition on contact visits
is acceptable even if it implicates a fundamental right, such as
family relationships.  Inmates of Allegheny County v. Pierce, 612
F.2d 754, 759 (3d Cir. 1979).

v. Brennan, 511 U.S. 825, 832 (1994); Helling v. McKinney, 509 U.S. 25, 31 (1993). Under Farmer, an inmate must surmount the high hurdle of showing that a prison official actually knew or was aware of a substantial risk to inmate safety and deliberately disregarded that risk. Beers-Capitol v. Whetzel, 256 F. 3d 120, 125 (3d Cir. 2001). This requirement of actual knowledge means that "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer, 511 U.S. at 837.

Courts have stressed that the duration of the complainant's exposure to the alleged unconstitutional conditions and the "totality of the circumstances" are critical to a finding of cruel and inhumane treatment. Moreover, the focus must be on the deprivation of a particular basic necessity. As explained in Wilson v. Seiter, 501 U.S. 294, 304-05 (1991):

> Some conditions of confinement may establish an Eighth Amendment violation 'in combination' when each would not do so alone, but only when they have a mutually enforcing effect that produces the deprivation of a single, identifiable human need such as food, warmth, or exercise – for example, a low cell temperature at night combined with a failure to issue blankets. To say that some prison conditions may interact in this fashion is a far cry from saying that all prison conditions are a seamless web for Eighth Amendment purposes. Nothing so amorphous as 'overall conditions' can rise to the level of cruel and usual punishment when no specific deprivation of a single human need exists.

In addition, the inmate must show that the prison official responsible for the conditions of confinement acted with "a

14

sufficiently culpable state of mind." Id. at 298.  A prison

official violates the Eighth Amendment when he acts with deliberate

indifference to a known objectively serious risk to a prisoner's

health or safety.  See Farmer, 511 U.S. at 837.   Critical factors

which must be considered are the duration of the complainant's

exposure to the alleged unconstitutional conditions and the

totality of the circumstances.

## Cell Lighting

Remaining Defendants correctly note that this Court

previously stated that the Complaint does not include a claim about

inadequate lighting at SCI-Fayette.  They generally add that there

is no claim of inadequate lighting at SCI-Smithfield.  See Doc.

162, p. 8.

A review of the Complaint shows that Plaintiff contends that

he was housed in an SCI-Smithfield RHU  cell with no lights because

an unidentified prison official refused to repair the big cell

light and the night light.  See Doc. 1, ¶ 148.  As a result,

Plaintiff purportedly fell and loosened his front tooth.

It is apparent that the Complaint includes a claim of

inadequate lighting at SCI-Smithfield.  However, Plaintiff contends

only that there was a failure to timely repair broken lighting and

there is no assertion that any of the Remaining Defendants had any

knowledge of that deficiency or were responsible for any delay in

the repair of the lighting entry of summary judgment on the basis

of lack of personal involvement is appropriate.  See Rizzo v.

Goode, 423 U.S. 362 (1976); Hampton v. Holmesburg Prison Officials,

15

546 F.2d 1077 (3d Cir. 1976) (each named defendant must be shown, via the complaint's allegations, to have been personally involved in the events or occurrences which underlie a claim).

**Potable Water**

Plaintiff contend that the water coming into his cell was green.  See Doc. 121, p. 20.  Remaining Defendants previously submitted competent evidence (Doc. 128, Exhibit 7) showing that the prison's water supply was annually tested with favorable results and that Whitney's institutional medical records do not indicate that he was ever diagnosed or treated for any problem relating to ingestion of impure water.  However, this Court added that the above information, although relevant, did not sufficiently establish that the drinking water inside of the Plaintiff's RHU cell was potable.

Based upon a declaration under penalty of perjury by DOC Maintenance Manager Frank Frey SCI-Smithfield uses water provided by the Borough of Huntingdon and that in order for water from the main pipeline to come out green via the connecting pipe in the Plaintiff's cell, use of the spigot or toilet in the cell would have to have been dormant for an extended period of time perhaps even a month.  See Doc. 164, p. 27.  Frey adds that even in such an exceptional case, the water would not be visibly green.

Since Remaining Defendants have provided competent, undisputed evidence which clearly contradicts Plaintiff's claim that water entering his cell was green, entry of summary judgment will be granted with respect to this claim.

16

**Reading Materials**

Plaintiff contends that prison officials confiscated multiple books and personal photographs.  See Doc. 1, ¶¶ 39-40.  He further contends that while in the SMU on Level 5 status he was not allowed to have newspapers, magazines or personal books.  See id. at ¶ 130.  Remaining Defendants assert that Plaintiff is not raising a claim of denial of reading materials.  Rather, he is challenging the confiscation of personal reading materials based upon a misconduct charge and subsequent transfer to SMU.

It is initially noted that a § 1983 claim cannot be brought to vindicate a prisoner's right to property when the deprivation occurs as a result of a tortious and unauthorized act of a state employer and where an adequate remedy exists to compensate those who have suffered tortious loss at the hands of the state.  Parratt v. Taylor, 451 U.S. 527, 543-544 (1981).  The United States Supreme Court has extended Parratt to include intentional deprivations of property, holding that where a prisoner has an adequate post-deprivation remedy under state law for any loss suffered to his property, a claim under § 1983 is not available.  Hudson v. Palmer, 468 U.S. 517, 532-533 (1984).  Consequently, regardless of whether the deprivation of property was the result of intentional or negligent conduct,  Whitney may not obtain relief under § 1983 if he has adequate remedies available under state law.  Since the Plaintiff clearly has both administrative and state court remedies available to him, his action to the extent it seeks compensation

for loss of personal reading materials and photographs is not proper and entry of summary judgment is appropriate.

Second, with respect to Plaintiff's lack of reading materials while on Level 5 status .  Supporting documents submitted by the Remaining defendants show that after being issued a misconduct Plaintiff was placed on SMU Level 5 at SCI-Fayette.  As a result, Plaintiff's property allowance was changed and he was no longer permitted to possess the same amount of property.  See Doc. 164, p. 14.  The property exceeding the new limitation was inventoried and placed in the prison's property room.[5]  See id. at p. 18.

Since the undisputed supporting materials submitted by the Remaining defendants show that the Level 5 related deprivation of reading material transpired at SCI-Fayette and this Court has previously concluded that any SCI-Fayette related claim is not properly brought before this Court, summary judgment will be granted with respect to this claim.

**<u>Religious Interference</u>**

The First Amendment states that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof; ..."  U.S. Const. Amend. I.  It is well settled

---

5.  The United States Supreme Court in <u>Beard v. Banks</u>, 548 U.S. 521, 525-27 (2006) addressed a similar DOC policy which restricted access to newspapers, publications and photographs to inmates in a Long Term Segregation Unit (LTSU).  The Supreme Court concluded that given the substantial deference given to the professional judgment of prison administrators, the DOC publications ban was constitutionally acceptable.

that imprisonment necessarily results in restrictions on the First Amendment's right to the free exercise of religion. Thornburgh v. Abbott, 490 U.S. 401, 407 (1989). However, inmates must be afforded "reasonable opportunities" to exercise their religious freedom guaranteed by the First Amendment. Cruz v. Beto, 405 U.S. 319, 322 n.2 (1972).  To set forth a viable constitutional claim a prisoner must establish that he had a sincerely held belief which was religious in nature before the First Amendment free exercise protections are deemed applicable. Africa v. Pennsylvania, 662 F.2d 1025, 1029-30 (3d Cir. 1981).

A viable claim under the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc-1(a)(RLUIPA) must establish that the inmate had a sincerely held religious belief and that a prison policy or official practice substantially burdened his exercise of those religious beliefs.  A substantial burden is one where: (1) a prisoner is forced to choose between following the precepts of his religion and forfeiting benefits otherwise generally available to other inmates versus abandoning a precept of his religion in order to receive a benefit; or (2) the government puts substantial pressure on an adherent to substantially modify his behavior and to violate his beliefs. Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).  Once a viable claim is asserted, the Government has the burden of demonstrating the burden furthers a compelling governmental interest and is the least restrictive means

19

of doing so.  See Washington v. Klem, 497 F.3d 272, 277-78 (3d Cir. 2007); Gould v. Beard, 2010 WL 845566 *4-5 (W.D. Pa. 2010).[6]

An inmate plaintiff must establish that he had a sincerely held belief which was religious in nature and that a prison policy or official practice substantially burdened his exercise of those religious beliefs in order to succeed on a  First Amendment claim. Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972); Africa, 662 F.2d at 1029-30.  A review of the Complaint shows that Plaintiff does not specify his religion.  In administrative grievances filed by Whitney, the inmate indicates that he is Muslim.  However, based upon undisputed documents submitted by the Remaining Defendants Plaintiff refused to provide correctional officials with a written notification as to what religious beliefs he practiced.

As a result, Whitney was classified as having no religious preference.  See Doc. 164, p. 7.  Since Remaining Defendants have provided evidence showing that Plaintiff refused to provide a written indication as to his religious preference (Id. at p. 6) this Court agrees that Plaintiff has not established that he had a sincerely held belief as required under both the First Amendment and RLUIPA.  Moreover, in light of his failure to identify his religion, prison officials cannot be found to have substantially

---

6.  However, RLUIPA does not permit an action against Defendants in their individual capacities."  Sharp v. Johnson, 669 F.3d 144, 153 (3d Cir. 2012).  Moreover, sovereign immunity has not been waived with respect to private claims for monetary damage under RLUIPA against state officials  in their official capacities.  See id.; Sossamon v. Texas, 563 U.S. 277, 131 S.Ct. 1651, 1660 (2011).

burdened the exercise of an unknown belief.   Entry of summary judgment is appropriate with respect to this claim.

**Urine Testing**

Plaintiff contends that he was subjected to excessive urine testing because he was required to provide samples every seven to ten days (15 times from January 20, 2011 to May 6, 2011).  See Doc. 1, ¶ 19.  Remaining Defendants contend that frequent testing was performed because Whitney made repeated refusals to provide urine samples during that same time period.

The constitutionality of random urine drug testing has been routinely recognized within this circuit.  See generally Elkin v. Fauver, 969 F.2d 48 (3d Cir. 1993), cert. denied, 506 U.S. 977 (1992); Frankenberry v. Williams, 677 F. Supp. 793 (M.D. Pa. 1988), aff'd 860 F.2d 1074 (3d Cir. 1988).

A declaration under penalty of perjury by SCI-Smithfield Major Daniel Myers provides that Whitney refused to provide urine samples as requested on three dates during early 2011.  See Doc. 128, p. 22 ¶ 7.  As a result of his non-compliant conduct the prisoner was relisted for testing and issued misconduct charges copies of which have been supplied to the Court.  See Doc. 127.

In light of the Whitney's multiple refusals to provide urine samples, the decision by prison officials to relist him for short term testing during the same time frame did not rise to the level of a constitutional violation.  Summary judgment will be granted with respect to this claim.

**Cell Searches**

Plaintiff contends that being subjected to monthly cell searches was excessive.  The United States Supreme Court in Hudson v. Palmer, 468 U.S. 517 (1984), established that inmates have no privacy rights in their cells, consequently, there is no constitutional prohibition against prison officials conducting unauthorized cell searches.  Id. at 525-26; Rambert v. Durant, No. CIV. A. 95-5636, 1996 WL 253322 *2 (E.D. Pa. May 10, 1996); Gilmore v. Jeffes, 675 F. Supp. 219, 221 (M.D. Pa. 1987).

However, it has also been held that while the Fourth Amendment's prohibition on unreasonable searches does not apply in prison cells, it does not mean that searches which constitute "calculated harassment unrelated to prison needs" are permissible.  Hudson, 468 U.S. at 530; Prisoners' Legal Ass'n v. Roberson, 822 F. Supp. 185, 189 (D.N.J. 1993); Proudfoot v. Williams, 803 F. Supp. 1048, 1051 (E.D. Pa. 1992) (stating that searches conducted for 'calculated harassment' may constitute an Eighth Amendment violation).  "Nor does it mean that prison attendants can ride roughshod over inmates' property rights with impunity."  Hudson 468 U.S. at 530.

Pursuant to the above discussion, the undertaking of month cell searches was not a violation of Plaintiff's constitutional rights under the standards announced in Hudson.

**Access to the Courts**

In addition to Plaintiff's claim of denial of legal research being unexhausted, it is additionally noted that prisoners enjoy a

22

constitutional right of meaningful access to the law libraries, legal materials, or legal services. Bounds v. Smith, 430 U.S. 817, 821-25 (1977). Inmates have a right to send and receive legal mail which is uncontroverted and implicates both First and Sixth Amendment concerns, through the right to petition the government and the right of access to the courts. "When legal mail is read by prison employees, the risk is of a 'chill,' rendering the prisoner unwilling or unable to raise substantial legal issues critical of the prison or prison employees." Proudfoot v. Williams, 803 F. Supp. 1048, 1052 (E.D. Pa. 1992).

The United States Supreme Court in Lewis v. Casey, 518 U.S. 343, 351-54 (1996), clarified that an inmate plaintiff, in order to set forth a viable claim under Bounds, must demonstrate that a non-frivolous legal claim had been frustrated or was being impeded. A plaintiff must also allege an actual injury to his litigation efforts. Under the standards mandated by Lewis, in order for an inmate to state a claim for interference with his legal work, he must demonstrate that he has suffered actual injury. See Oliver v. Fauver, 118 F.3d 175, 177-78 (3d Cir. 1997)(concluding that Lewis effectively requires a showing of actual injury where interference with legal mail is alleged).

Based upon an application of Lewis to the undisputed facts, the unopposed request for summary judgment will be granted with respect to Plaintiff's denial of access to the courts claim since there is no evidence that the purported deprivation caused him to

suffer any injury to a non-frivolous legal claim.  An appropriate

Order will enter.


                         S/Richard P. Conaboy _____
                         RICHARD P. CONABOY
                         United States District Judge


DATED:  SEPTEMBER 19, 2016